## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA


JOHN DOE,                               )
    PLAINTIFF                         )  Civil No. 16-2159
                                                                                 )
v.                                      )
                                                                                 )  **COMPLAINT**
FEDERAL BUREAU OF PRISONS,              )
                                        )
                                        )
DEAN PERRY,                             )
                                        )
                                        )
STEPHEN GRIMM,                          )
                                        )
                                        )
[FNU] BUTTS,                            )
                                        )
                                        )
[FNU] SHAFFER,                          )
                                        )
                                        )
CHRIS KING,                             )
                                        )
                                        )
S. MARSHALEK,                           )
                                        )
                                        )
[FNU] HAYES,                            )
                                        )
                                        )
STEVEN MERLAK,                          )
                                        )
                                        )
[FNU] STOREY,                           )
                                        )
                                        )
[FNU] RAMIREZ,                          )

|                          |   |
|--------------------------|---|
|                          | ) |
|                          | ) |
| **TIMOTHY MONTGOMERY,**  | ) |
|                          | ) |
|                          | ) |
| **[FNU] COLE,**          | ) |
|                          | ) |
|                          | ) |
| **DAVID PARKER,**        | ) |
|                          | ) |
|                 **DEFENDANTS** | ) |
|                          | ) |

Plaintiff, **JOHN DOE**,[1] by and through undersigned counsel, respectfully

requests and demands declaratory, injunctive, and monetary relief under the

Privacy Act of 1974 (5 U.S.C. § 552a, *et seq.*); the Federal Declaratory Judgment

Act, 28 U.S.C. § 2201; *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S.

388 (1971); and federal breach of contract case law.

Doe respectfully requests and demands jury trial regarding all matters so

triable.

In support of this Complaint, Doe states as follows on information and belief,

except as otherwise noted:

## I.  PARTIES

1.    **Plaintiff**, **John Doe**, is a citizen and resident of the State of Michigan.  At

all times relevant to this complaint, Doe was a prisoner in custody of the

---

[1] This suit is filed without the Plaintiff's real name, given the sensitive nature of this substantial assistance matter.

Federal Bureau of Prisons at the Federal Correctional Institution ("FCI") Elkton, Ohio, under sentence of a court established by Act of Congress.

2. **Defendant, Federal Bureau of Prisons ("BOP")**, is a federal agency as defined by 28 U.S.C. § 2671.  The BOP is responsible for administering FCI Elkton.  *See* 18 U.S.C. § 4042.  Employees at FCI Elkton were, at all relevant times stated herein, in the employment, supervision, and control of Defendant BOP.  *See* 18 U.S.C. § 4041.

3. **Defendant, Dean Perry**, was at all times relevant to this complaint a BOP employee and correctional officer at FCI Elkton.  This defendant is sued in both professional and personal capacities.

4. **Defendant, Stephen Grimm**, was at all times relevant to this complaint a BOP employee and Captain at FCI Elkton. This defendant is sued in professional capacity only.

5. **Defendant, [FNU] Butts**, was at all times relevant to this complaint a BOP employee and member of FCI Elkton's Special Investigative Service ("SIS").  This defendant is sued in professional capacity only.

6. **Defendant, [FNU] Shaffer**, was at all times relevant to this complaint a BOP employee and member of FCI Elkton's Special Investigative Service ("SIS").  This defendant is sued in professional capacity only.

7. **Defendant, Chris King**, was at all times relevant to these claims was a BOP

employee and case manager at FCI Elkton. This defendant is sued in professional capacity only.

8.    **Defendant, S. Marshalek**, was at all times relevant to this complaint a BOP employee and Counselor of Bravo Unit at FCI Elkton.  This defendant is sued in professional capacity only.

9.    **Defendant, [FNU] Hayes**, was at all times relevant to this complaint a BOP employee and Unit Manager at FCI Elkton.  This defendant is sued in professional capacity only.

10.   **Defendant, Steven Merlak**, was at all times relevant to this complaint a BOP employee and Warden of FCI Elkton.  This defendant is sued in professional capacity only.

11.   **Defendant, [FNU] Storey**, was at all times relevant to this complaint a BOP employee and an associate warden at FCI Elkton.  This defendant is sued in professional capacity only.

12.   **Defendant, [FNU] Ramirez**, was at all times relevant to this complaint a BOP employee and an associate warden at FCI Elkton.  This defendant is sued in professional capacity only.

13.   **Defendant, Timothy Montgomery** was at all times relevant to this complaint a BOP employee and Disciplinary Hearing Officer ("DHO") at FCI Elkton.  This defendant is sued in both professional and personal

capacities.

14.   **Defendant, Ms. [FNU] Cole**, was at all times relevant to this complaint a

      BOP employee and Case Management Coordinator at FCI Elkton.  This

      defendant is sued in professional capacity only.

15.   **Defendant, David Parker**, Register Number 79769-083, was at all times

      relevant to this complaint an inmate at FCI Elkton.  This defendant is sued in

      both professional and personal capacities.

## II.  JURISDICTION AND VENUE

16.   This Honorable Court possesses original jurisdiction over this matter under 5

      U.S.C. § 552a(g)(1) and 28 U.S.C. § 1331.

17.   Venue is appropriate in this district under 5 U.S.C. § 552a(g)(5) and 28

      U.S.C. § 1391.

## III. FACTUAL BACKGROUND

18.   BOP maintains and operates the Federal Correctional Institution ("FCI")

      Elkton, Ohio, a low-security prison.

19.   Plaintiff Doe pleaded guilty to bank fraud conspiracy under 18 U.S.C. §§

      1349 and 1344.  *See United States v. Doe*, 2:14-CR-20752-001 (E.D. MI).

      Among other penalties, on or about December 3, 2015, Doe was sentenced

to 24 months in prison.

20.   As ordered, Doe surrendered himself to FCI Elkton on February 29, 2016.

21.   Doe was asked to help an inmate, Defendant David Parker, an informant for the warden and SIS.  Inmate Parker was placed in Doe's cell, as an agent of the BOP employees, to tell Doe that the SIS and the captain wanted to speak.

22.   Doe met with Captain Stephen Grimm, and Special Investigative Service ("SIS") agents Shaffer, Butts, and Hoover.  Doe was unable to provide the BOP team information about a specific inmate of interest.  But at this first meeting, in return for substantial information, Captain Grimm and the other BOP employees promised Doe relocation to FCI Milan, Michigan, then 12 months of halfway house.

23.   This promise between Doe, Captain Grimm, and the other BOP employees – 12 months of halfway house in return for substantial assistance – was made on behalf of the United States Government and the Federal Bureau of Prisons, in furtherance of BOP security operations that were at all times under the supervision and control of, at the least, Captain Grimm and Elkton's SIS staff.

24.   Relying on that promise made by BOP employees, Doe provided information concerning contraband-involved inmates, correctional officers, and an outside individual.  The information Doe provided interrupted Elkton

6

FCI's black markets in cigarettes, stamps, and suboxone trafficking. Doe also provided information about inmate gambling, and his cooperation led to removal of at least six contraband cell phones from Elkton's compound.

25. SIS Hoover later reiterated that Doe would receive 12 months of halfway house. Also, a correctional officer known to Doe only as "Poochie" visited Doe. Poochie told Doe that SIS Hoover had sent Poochie to reassure Doe about the 12 months of halfway house being forthcoming.

26. Inmate-Defendant Parker, on behalf of his BOP handlers, subsequently assured Doe that BOP staff would fulfill the oral contract described below. These same assurances, that 12 months of halfway house would follow Doe's cooperation, were (on information and belief) also provided by, *inter alia*, BOP Employee-Defendants Grimm, Butts, Shaffer, King, Hayes, Merlak, Storey, Ramirez, and Cole (all named in professional capacities only).

27. Doe had understood his cooperation would be followed by sequestration somewhere besides the SHU, to be followed by transfer to Milan FCI until his release to 12 months of halfway house confinement. Instead, after the contraband seizures, Doe was placed in "protective custody" – a form of "administrative segregation" – in the same Special Housing Unit ("SHU" or "the Hole") that Elkton staff had placed the inmates caught through Doe's

7

information.

28. Doe had early conflicts with a correctional officer, Dean Perry, named as a Defendant here in both personal and professional capacities. Doe first availed himself of an administrative remedy again Defendant Perry's conduct on or about June 15, 2016. Doe understood that Elkton staff or administration would resolve the issues with CO Perry.

29. On or about June 27, 2016, CO Perry had occasion to cuff John Doe. Defendant Perry cuffed Doe very tightly, asking Doe: "why did you tell the captain on me you f***ing rat?"

30. Doe asked to have the cuffs loosened, and CO Perry proceeded to call him a "mother f****ng rat." CO Perry then told other inmates in that SHU range that Doe was an informant. Defendant Perry specifically told a gang-affiliated inmate that Doe was responsible for that inmate being in the SHU for cell phone possession.

31. Informant status is highly-protected information, for obvious reasons. CO Perry potentially put Doe's life in jeopardy, while simultaneously obstructing ongoing administrative and possibly criminal investigations.

32. Doe at no point gave any person, actual or legal, permission to disclose his informant status to anyone, let alone the very inmates in the Hole with him because of his substantial assistance.

33.     After CO Perry announced Doe's informant status to every person in the

SHU, Doe pressed the panic alarm available in his cell.  Afterwards, Doe

was left with the inmates who knew him to be an informant, despite the

panic alarm's use and disclosure of his informant status.

34.     Doe was "written up" for pressing that emergency alarm and for threatening

CO Perry, by the very correctional officer who put Doe's life in jeopardy for

talking to the Captain, after that very staff member committed among the

gravest of possible Privacy Act breaches.

35.     After Defendant Perry notified the entire Special Housing Unit range that

Mr. Doe was a "mother f****** rat," Doe's cellmate kept asking to see his

"paperwork" and prove that Doe was not an informant.  Doe was also aware

that the gang-affiliated inmate whose cell phone had been given up by Doe

remained in that very SHU range.

36.     During this time, CO Perry also told Doe to be careful of his food, since

everyone knew that Doe was "a rat."  Doe thereafter lost a substantial

amount of weight, typically eating only items from the visiting room

vending machines – foodstuffs that could not have been tampered with.

37.     Despite knowing of the dangers that Doe faced from his cellmate, who

demanded proof of non-cooperation, as well as the other inmates on the

SHU range, and despite being notified about the threats and taunting that

Defendant Perry heaped upon Plaintiff Doe (observable through at least the SHU's video and likely audio feeds), Elkton administration and staff did nothing to protect Doe until a representative from the regional counsel's office became involved.

38.  One of Doe's lawyers contacted the institution repeatedly about these matters.  When the institution did not respond to her correspondence, that attorney contacted a regional counsel.

39.  *After* the regional office lawyer was contacted by one of Doe's lawyers, Doe was finally moved to a cell with a different inmate who was indifferent to Doe's paperwork or cooperation status.

40.  As is required, Doe was eventually given a hearing before Disciplinary Hearing Officer ("DHO") Timothy Montgomery.

41.  Doe avers that DHO Montgomery refused to consider at least one affidavit in defense, and refused to call witnesses on Doe's behalf.  Doe was also not given a staff representative as required.

42.  Further, the DHO screamed at Doe, asking "who the f*** do you think you are?"

43.  DHO Montgomery further and subsequently refused to make copies of witness statements for Doe.  The DHO also would not make copies of the incident report and hearing findings that Doe is constitutionally and

administratively entitled to.  Doe avers that the DHO told him that he would

never see the report, despite Doe needing the final DHO report to seek

administrative remedy under BOP regulations.

44.   As the file stands today, Doe's record reflects an incident of falsely using

emergency equipment and threatening an officer.  Without timely access to

the DHO report, Doe's right to appeal has been thwarted.  Without timely

access to responses about his other administrative grievances, Doe was

entirely denied access to the BOP's administrative remedy program.

45.   These denials of access were final denials from the BOP, and they wholly

frustrated Doe's rights to petition and enjoy due process (and his ability to

exhaust administrative remedies), however the BOP might now just ignore

28 C.F.R. Part 542 and P.S. 1330.18 to try and reset its own deadlines.

46.   In early August 2016, Doe was taken to a room to make a telephone call, as

requested by the SIS and the captain.

47.   Two BOP officers remained in the room when Doe called his attorney.

Captain Grimm wanted Doe's lawyer to stop writing letters and complaining

to the region about his treatment.  Doe conveyed that the BOP was going to

move him to a place he was "okay" with, and that Doe was definitely going

to get the promised 12 month halfway house.

48.   During that call with two officers present, Doe told his lawyer that the unit

team had placed an inapplicable sex offender Public Safety Factor ("PSF") on Doe's internal inmate scoring, to raise his security level.

49. Doe thereafter filed an administrative challenge (a "BP-8") that cited to the BOP Program statement forbidding this sex offender PSF under Doe's facts. Staff told Doe through his cage bars that Doe was not getting anything, and that the answer to his eight was no.

50. The officer refused to give Doe the required written denial of the BP-8, despite Doe's express request.

51. One of Doe's attorneys provided additional information to the Regional Office including, *inter alia*, by letter dated September 26, 2016.  BOP officers at the Regional Office have failed to act upon Doe's petitions.

52. The BOP's regional counsel directed Doe to file administrative remedies, when one of the issues is the BOP's failure to accept or answer these very remedies as regarded John Doe while he could still timely appeal.

53. The BOP has created a catch-22 for Doe wherein he is required to file internal BOP paperwork to obtain relief for BOP wrongdoing, while BOP systematically thwarts his ability to vindicate statutory and constitutional rights related to BOP's violations.   .

54. Doe has since been moved to FCI Allenwood (low-security) ("Allenwood Low"), not FCI Milan nearest to his family as promised in exchange for his

substantial assistance.

55.  While at Allenwood Low, on or about October 18, 2016, Doe finally
     received the Elkton DHO finding needed to administratively appeal –after
     the deadline to file that very appeal had passed under the administrative
     remedy rules of P.S. 1330.18, "Administrative Remedy Program."  For this
     very reason, so that Doe could file a timely appeal, the DHO finding was
     due to Doe within days after the August hearing, not months.

56.  To Doe's knowledge, there is still nothing in his central file or paperwork to
     indicate 12 months of halfway house, as assured to Doe in consideration for
     his substantial assistance.


## VI. CAUSES OF ACTION


### First Cause of Action

### Privacy Act—Improper Dissemination

57.  Plaintiff Doe asserts and re-alleges the paragraphs above, as if fully set forth
     here.

58.  The BOP, through the actions of correctional officer Dean Perry,
     disseminated to every inmate on the same Special Housing Unit ("SHU")
     range as John Doe information concerning Doe that was sensitive, secured,

and protected by the Privacy Act. *See generally*, 5 U.S.C. § 552a. This information included, but is not limited to, that Doe had cooperated with authorities against fellow inmates, including inmates in the SHU who heard that unlawful dissemination.

59. The BOP failed to secure written authorization from Doe before providing the specific information detailed above, and no routine exception permitted disclosure. It was clear to any reasonable officer that this unauthorized dissemination violated the Privacy Act (specifically, section (b)).

60. As a result of the BOP's Privacy Act violations, including through Dean Perry, John Doe has suffered adverse and harmful effects including, but not limited to: risk of physical harm from other inmates, physical sequestration, extreme weight loss, mental distress, emotional trauma, embarrassment, and humiliation.

## Second Cause of Action

## Privacy Act—Improper Accounting of Disclosures

61. Plaintiff Doe asserts and re-alleges the paragraphs above, as if fully set forth here.

62. The Privacy Act requires the BOP to account for disclosures made under the Privacy Act. *See* 5 U.S.C.A. § 552a(c)**.**

63. BOP did not comply with this accounting requirement as regards the dissemination pleaded above by Defendant Perry.

64. As a direct and proximate result of this failure to account for the Privacy Act failure, John Doe has on an ongoing basis suffered adverse effects including, but not limited to, severe emotional distress and an ongoing threat of physical harm from inmates in a culture that punishes cooperators.

**Third Cause of Action**
**Intentional Infliction of Emotional Distress**

65. Plaintiff Doe asserts and re-alleges the paragraphs above, as if fully set forth here.

66. Intentional infliction of Emotional Distress occurs when "extreme and outrageous conduct on the part of the defendant . . . either intentionally or recklessly . . . cause[s] the plaintiff severe emotional distress." *Halcomb v. Woods*, 610 F. Supp. 2d 77, 80 (D.D.C. 2009) [internal citations omitted].

67. By announcing Plaintiff Doe's cooperator status to an entire SHU range of inmates, including inmates who were in the Hole because of Doe's cooperation with BOP personnel, Defendant Perry engaged in conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Halcomb v. Woods*, 610 F. Supp. 2d

at 80.

68. Telling federal inmates that the person responsible for their suffering is a "rat" just down the cell range is beyond reckless.  Telling a specific inmate that Doe was responsible for that inmate's situation, and warning Doe to be careful about eating any food he was given, was intentional conduct by any definition.  Doe avers that Defendant Perry did all of these things.

69. Because of Defendant Perry's outrageous acts, Plaintiff Doe suffered severe emotional distress "of so acute a nature that harmful physical consequences" manifested in the forms of, *inter alia*, extreme weight loss and ongoing, chronic sleeplessness.  *Halcomb v. Woods*, 610 F. Supp. 2d at 81 [internal citation omitted].

### Fourth Cause of Action

### Breach of Contract

70. Plaintiff Doe asserts and re-alleges the paragraphs above, as if fully set forth here.

71. "To prevail on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Brown v. Sessoms*, 774 F.3d 1016, 1024 (D.C. Cir. 2014).

72.  On behalf of the BOP, and so the United States, and in furtherance of BOP and Elkton security operations, BOP staffers including, among others, SIS agent Hoover and Defendants Butts and Shaffer promised to provide Plaintiff Doe with a 12-month placement in halfway house.  For that consideration, Doe was to provide substantial assistance to his BOP handlers at Elkton.

73.  Doe detrimentally relied on the oral contract when he provided assistance and, to his detriment, was moved to a SHU purportedly for his protection. His time in prison remained the same, and Doe suffered additional detrimental treatment as set forth above.  Meanwhile, the BOP and Elkton obtained a benefit by eliminating contraband within Elkton, which provided greater security and discipline within Elkton.

74.  Though the BOP was thereafter bound to honor the terms of its oral contract, including Doe's 12-month placement in halfway house, it breached those terms by, *inter alia*, not providing the 12-month placement.

75.  Doe's damages after this breach include additional time in a prison that he would not be required to serve, if the BOP honored its contract.  The damages are amplified by the Privacy Act violation pleaded above, which makes Doe's remaining prison sentence all the more dangerous among other inmates who traditionally disfavor, and often physically punish, cooperating

inmates.

## Fifth Cause of Action

## First Amendment—Denial of Rights to Petition

76.    Plaintiff Doe asserts and re-alleges the paragraphs above, as if fully set forth

here.

77.    Even prisoners retain a First Amendment right to petition the Government,

including the BOP, for redress of grievances.  *See, e.g., Turner v. Safley*, 482

U.S. 78, 84 (1987).

78.    Even "an ordinarily permissible" exercise of discretion "may become a

constitutional deprivation if performed in retaliation for the exercise of a

[F]irst [A]mendment right."  *See, e.g., Toolasprashad v. Bureau of Prisons*,

286 F.3d 576, 585 (D.C. Cir. 2002) [internal quotation omitted].

79.    To seek redress from BOP agents, federal inmates must comply with the

BOP's regulations governing the administrative remedy process.  See 28

C.F.R., Ch. 542; Program Statement (P.S.) 1330.18, *Administrative Remedy*

*Program* (January 6, 2014).  These regulations require that inmates first seek

redress from institutional staff on a prescribed form (usually the BP-8, or

BP-8-1/2.

80.    When this petition to staff is denied, inmates must appeal to the institution's

warden on a Form BP-9.  That denial is appealed to the appropriate Regional Office on a form BP-10, and that denial is appealed to the BOP's Central Office in Washington, D.C. on a Form BP-11.  Every appeal must include copies of the BP Forms and BOP denials from every subordinate stage.

81.  The BOP does not provide any other avenue through which Plaintiff Doe could have petitioned for redress of his grievances.  Moreover, not only can the inmate find no executive redress without BOP staff complying with the BOP's administrative remedy process, access to the courts depends with limited exception upon exhausting this entire administrative remedy process.

82.  BOP agents, including DHO Montgomery personally, denied Doe the ability to complete this process by failing to timely respond to a litany of BP-8s; and by failing to timely respond to other challenges including distribution of the final DHO report after Doe's disciplinary hearing.

83.  BOP agents denying the right to petition would "inhibit an ordinary person from speaking," *Toolasprashad v. Bureau of Prisons*, 286 F.3d at 585, and did inhibit Doe from speaking against the treatment he was receiving at Elkton FCI.  This conduct meets the standard for retaliation against Doe for exercising First Amendment rights.

**Sixth Cause of Action**
**Past and Future Physical, Mental, and Emotional Pain and Suffering,**

**and Treatment Expenses**

84.   Plaintiff Doe asserts and re-alleges the paragraphs above, as if fully set forth

here.

85.   Plaintiff Doe has pleaded some of the physical, mental, and emotional

effects directly and proximately caused by the Defendants' actions.

86.   As of today, there is no way to know the ongoing physical, mental, and

emotional consequences of the conduct pleaded above.  But these harms will

also follow directly and proximately from the Defendants' conduct, and are

ripe for adjudication along with the balance of these claims.


## VI. PRAYER FOR RELIEF


*WHEREFORE*, Plaintiff Doe respectfully demands judgment against the

Defendants, as follows:


(1) Declare that the BOP violated the Privacy Act;


(2) Enjoin the BOP and its agents or employees from further violations of the

Privacy Act;

(3) Award John Doe any actual damages under 5 U.S.C. § 552a(g)(4)(A), the exact

  amount of which is to be determined at trial but is not less than $1,000;

(4) Award Doe all other exemplary damages to which he might be entitled;

(5) Award Doe all punitive damages to which he might be entitled;

(6) Award Doe legal interest on all damages, calculated from the first date of

  judicial demand until paid in full;

(7) Award plaintiff all allowable costs and attorneys' fees;

(8) Refer those BOP officials responsible for violating the Privacy Act for

  prosecution under, *inter alia*, 5 U.S.C. § 552a(i)(1);

(9) expedite this action as specified under 28 U.S.C. § 1657(a); and

(10) grant all other relief the Court may deem just and proper.


Dated: 27 October 2016                Respectfully submitted,


By:      **/s/ Carmen Hernandez**

Carmen D. Hernandez
Bar No. MD03366
7166 Mink Hollow Road
Highland, MD 20777
Phone: (240) 472-3391
Fax: (301) 854-0076
Email: *chernan7@aol.com*


By:      **/s/ EJ Hurst II**

EJ Hurst II (*N.C. Bar No. 39261*)
*Pro Hac Vice Admission Pending*
**Attorney and Counselor at Law**
6409 Fayetteville Road
  Suite 120, PMB 326
Durham, North Carolina 27713
Tel:  (859) 361-800
Fax: (866) 876-7269
Email: *jayhurst@jayhurst.net*


Attorneys for Plaintiff, John Doe